S. Samuel Di Falco, S..
The executrix, who is the widow and the sole residuary legatee under decedent’s will, instituted the present proceeding for a judicial construction of the will insofar as it relates to the disposition of the shares of stock of Bob, Inc. Of the 500 shares of stock issued by that corporation, 125 shares had been owned by the testator and 375 shares were owned by his mother. After the death of the testator’s mother in 1950, the testator became the owner of all issued shares of stock. In the fifth paragraph of his will (which was executed on September 14, 1955) the testator bequeathed all of the shares of Bob, Inc., to 9 named employees. In the first paragraph of the codicil, which is dated July 18, 1957, the testator bequeathed the stock *38 of Bob, Inc., to 16 persons in the proportions therein stated, including the original 9 whose proportionate interests were necessarily changed. The executrix raises several questions with respect to the disposition of this stock.
Subdivision (b) of the first paragraph of the codicil reads: £ £ In the event that any of the persons named in sub-paragraph (a) above, who are now employees of Bob, Inc., shall predecease me or shall not be in the employ of Bob, Inc. on the date of my demise, I direct that the shares of Bob, Inc. stock that would otherwise go to that person shall be divided among the other persons named in sub-paragraph (a) above, pro rata.” The executrix asks instructions respecting the bequests to Vincent Borneo, Joseph Baffo and Leo Amato.
Vincent Borneo predeceased the testator and under the terms of subdivision (b), the 5% share originally bequeathed to him is to be divided among the other legatees in proportion to their respective interests. It has been stipulated on the record that Leo Amato survived the decedent, and that at the time of the execution of the codicil and at the time of the death of the testator, he was in the employ of Bob, Inc., within the meaning of the codicil. He is accordingly entitled to his prorata share.
It is undisputed that Joseph Baffo worked for Bob, Inc., from 1921 until he became ill during the year 1954. After his illness, he did not render any service to the corporation and he was never paid any salary. It thus appears that at the time the testator executed the codicil, Joseph Baffo was not actually employed by the corporation in the sense of his rendering services for pay at that time. The testator, however, was well aware of the status of Joseph Baffo. The will was executed approximately one year after Baffo became unable to work. In that instrument Baffo was not a legatee of stock. In subdivision (f) of the paragraph disposing of the stock, immediately following directions for election of directors of the corporation and continuance of the corporate name, the testator wrote: ££ I also express my request that Joseph Baffo be retained in the employ of Bob, Inc., so long as he is able to work.” (Emphasis added.) In the opinion of the testator Baffo was still an employee in 1955 although unable at that moment to render active service. Nearly two years later, the testator made the codicil which added Baffo and others as legatees. The conditions and provisions in the codicil relating to the stock are identical with those in the will. Subdivision (b) of the respective paragraphs is identical in both instruments. The testator was well aware of Baffo’s status because he added him as. a legatee and eliminated the request for his retention as an employee.
*39 Subdivision (b) can be interpreted in either of two ways: first, as suggested by Baffo, as meaning that the requirement for continuance in service is applicable only to those named persons “ who are now employees of Bob, Inc.,” and not to those who are not “now” so employed; second, as meaning that while the requirement is applicable to all of the named persons, all of them then enjoyed the status of employees, as that term is used in his will by this testator. Baffo’s status with the corporation remained unchanged from that moment up to the testator’s death. Under either interpretation Baffo qualifies for his share of the legacy.
Subdivision (c) of the first paragraph of the codicil is in text identical with the provisions of the will and reads as follows: “(c) Each of the persons named in sub-paragraph (a) above shall, in consideration for and as a coxditiox of the distribution of shares of Bob, Inc., stock to him, enter into a written agreement in form satisfactory to my wife, Helen Mahar Spear, that he will take all necessary action to assume liability in a percentage equal to the percentage of such shares of stock to be distributed to him; for all indebtedness, due at the time of my death to Bob, Inc., from either myself or from my deceased mother, Mary Elizabeth Spear, or from her estate, and that he will agree to hold harmless my estate and my wife, Helen Mahar Spear, her heirs, executors administrators, successors or assigns, from any liability to Bob, Inc. which may exist by virtue of such indebtedness or which may arise thereform. In the event that any of the persons named in sub-paragraph (a) above refuse or fail to enter into any such agreement within one month after being requested by my Executors to do so, I direct that no shares of Bob, Inc. be distributed to such person and all shares not distributed shall become a part of the residuary of my estate to be disposed of under the terms of paragraph sixth of my Last and (sic) Will and Testament dated September 14, 1955. The terms of this sub-paragraph (c) shall be binding upon the heirs, executors, administrators, successors or assigns of each person named in sub-paragraph (a) above. This sub-paragraph (c) shall be inoperative in the event my wife, Helen Mahar Spear, predecease me, or in the event she expressly waives the terms and conditions hereof. All shares of stock distributed to the persons named in sub-paragraph (a) above shall be vested absolutely, as of the time of my death, in such persons, pursuant to sub-paragraphs (a) and (b) subject to being divested under the provisions of this sub-paragraph (c).
‘ ‘ In the event my wife, Helen Mahar Spear survive me and any Surrogate, Probate Court of other Court holds invalid or *40 inoperative any of the terms and conditions of this sub-paragraph (c) then I direct that all my shares of Bob, Inc. be distributed to my wife, Helen Mahar Spear. ’ ’
It is alleged in the petition, and it is conceded by all parties, that the mother of the testator had borrowed from the corporation during her lifetime, and that at the time of her death there was due and owing by her to the corporation the sum of $34,864.27. Her estate was solvent and the decedent inherited all of her shares of stock. Thereafter the testator borrowed money from the corporation so that at the time of his death he owed the corporation $9,362.38. The debt of the testator’s mother to the corporation had meanwhile been reduced to $22,864.27, with the result that at the time of the death of the testator the debts to Bob, Inc., owed by him and his mother aggregated $32,226.65. According to the balance sheet of the corporation as of the date of death of the testator, the net worth of Bob, Inc., was $107,936.20, excluding good will, but including as assets the obligations of the decedent and his mother. After the death of his mother, the testator was the sole stockholder of Bob, Inc., its president and a director. The debt to the corporation was acknowledged yearly and was also acknowledged by the testator on the date of the execution of the codicil. No one disputes any of these facts.
The petitioner is the widow, the executrix, the sole residuary legatee, and would be the sole beneficiary of-the stock if the gift of the shares of the employees is invalidated. In this proceeding she has attacked the gift in every way possible, contending that it is illegal, invalid, inoperative, ambiguous and too vague to be performed. The beneficiaries are ready and willing to make an agreement in compliance with subdivision (c) of the first paragraph of the codicil, but the widow is unwilling or unable to agree on any form of contract or any particular action. She contends that the codicil requires the beneficiaries to indemnify her against not only the loans and interest thereon, but also against payment of any fines, penalties, taxes or other charges that might be levied or assessed against the testator’s personal representative because of the making of the loans. The widow does not pretend to know what total amount the legatees must assume to pay, arguing that it is all so vague and general that this paragraph of the will is invalid for uncertainty in material particulars.
With respect to the claim of invalidity, the widow cites section 59 of the Stock Corporation Law which provides that ‘ ‘ No loan of moneys shall be made by any stock corporation ‘ * * * or by any officer thereof out of its funds to any stockholder *41 therein ”. She reads the provisions of the will as violative of this section and of the public policy therein expressed. She speaks of creditors of the corporation and the possible injury to them, although the other parties deny that there are or were any substantial creditors and that there is any possibility of injury to creditors. In any event, it must be noted that this will does not provide for the borrowing of money from the corporation or for the continuance of loans. What the will deals with is the method of repayment of the loans to the corporation. Even if there was a violation of law in connection with the making of the loans, there is certainly no violation of the statute in repaying them. The court holds that the first paragraph of the codicil is not invalid as violative of public policy.
The will requires the beneficiaries to assume a prorata liability “ for all indebtedness due at the time of my death to Bob, Inc., from either myself or from my deceased mother * * * or from her estate ”. The amount of the indebtedness is reflected on the corporate books and is admitted by every party to this proceeding. There is no difficulty whatever in complying with this requirement. The codicil further requires that the beneficiaries agree “ to hold harmless my estate and my wife * * * from any liability to Bob, Inc. which may exist by virtue of such indebtedness or which may arise therefrom.” There should be no.difficulty whatever respecting agreement to hold the estate harmless from any liability which might exist by virtue of the indebtedness. The liability existing by virtue of the indebtedness is the liability to pay the debt and all interest thereon. The beneficiaries are willing and have offered to do that. With respect to the requirement that the beneficiaries must agree to hold harmless the estate and the widow from any liability “ which may arise therefrom ”, the widow contends that the possibilities are so broad and so great that it is impossible now even to estimate the liabilities that might arise therefrom. She invisions fines, penalties, tax claims and the like. The purpose of the testator in annexing these conditions to the bequest of the stock is not difficult to understand. He intended to give all of the stock of this corporation to the faithful employees who had contributed to its success. The widow was the beneficiary of other substantial provisions. However, the testator did not wish to give the stock beneficiaries the right to compel the estate to pay estate funds into the corporate treasury for the benefit of the corporation. The beneficiaries of the stock were to take the corporation in the condition in which it existed at the time of his death; those who were to receive of his bounty were not also to become creditors of his estate. Whatever *42 obligations he owed to the corporation, including those which he assumed on his mother’s death, were to be assumed by the legatees so that, as owners of all of the outstanding stock, they would lose the right to compel the estate to contribute funds to the corporation. The testator undoubtedly did not regard his action in borrowing moneys as illegal or wrongful. He was not contemplating fines and penalties. Moreover, there is no basis in the present record for thinking that fines or penalties are in any way likely to result from the testator’s conduct. A possible income tax liability of the testator cannot reasonably be said to have been in the contemplation of the testator when he spoke of holding his estate harmless from any liability which might arise from the indebtedness. An assessment of taxes would not arise from the indebtedness but rather from something quite different in character. Moreover, the will speaks of liability to Bob, Inc., and not of liability to any other person or institution. Fairly interpreted, the words “ liability to Bob, Inc. * * * which might arise therefrom ” (i.e., from the indebtedness) could encompass only the total amount of the indebtedness, the interest thereon, and any costs imposed in an action to recover it.
The court holds that the beneficiaries are required under the terms of the codicil to assume the indebtedness and to hold the estate and the widow harmless from any liability for the total indebtedness and all interest thereon. There has been no attempt to formulate an agreement and hence there is no form of agreement now before the court. Some of the beneficiaries have stated on the argument that there will be no question respecting the formulation of an agreement because they will give the estate the best possible protection against liability, that is, the payment of the indebtedness in full. If provision were made for prompt payment of the indebtedness and accrued interest thereon, there would be no further liabilities toward Bob, Inc. If payment is not to be made presently but agreements are to be made within the terms of the codicil, the widow will not be justified in annexing conditions other than those stated in the codicil. While the codicil specifies that the agreement shall be “ m form satisfactory to [the testator’s] wife ”, it does not entitled her to refuse arbitrarily to accept any agreement at all. Inasmuch as payment of the indebtedness may be made or,- again as suggested herein, by indemnification by surety company bond, there, would not appear to be any real basis for dispute over “ form ” of an agreement. The court will reserve for determination hereinafter any issue respecting the form and content of the agreement, if necessary. Thereafter a decree may be submitted on notice construing the will accordingly.